Mary GRUBS, as Administratrix of the Estate of Charles Grubs, Deceased, Plaintiff,

v.

CONSOLIDATED FREIGHTWAYS, INC., a corporation, Defendant.

Clyde McKEEHAN, Plaintiff,

v.

CONSOLIDATED FREIGHTWAYS, INC., a corporation, Defendant.

Civ. Nos. 292, 293.

United States District Court
D. Montana,
Billings Division.
Nov. 23, 1960.

Sandall, Moses, Cavan & Battin, Billings, Mont., for plaintiffs.

Woods, Fuller, Shultz & Smith, Sioux Falls, S. D., and Coleman, Lamey & Crowley, Billings, Mont., for defendant.

JAMESON, District Judge.

Defendant has moved the court to transfer these actions to the District Court of the United States for the District of South Dakota, Western Division, Deadwood, South Dakota, "for the convenience of the court, parties, witnesses, and in the interest of justice". Since the enactment of 28 U.S.C.A. § 1404(a),[1] the

---

1. "§ 1404 Change of venue

"(a) For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." There is no question that these actions might have been brought in the District Court of South Dakota, Western Division.

courts have set forth various criteria for determining motions for transfer. Where, as here, there are many competing factors, such motions still require "considerable deliberation on the part of the court prior to decision because of the voluminous facts and criteria requisite to a decision." [2]

In each of these actions the plaintiff is a resident and citizen of the State of Montana and the defendant is a citizen of the State of Washington. In Cause No. 292, plaintiff seeks damages for the death of Charles Grubs as the result of an accident which occurred on February 22, 1960, on U. S. Highway No. 12, about two miles west of McIntosh, South Dakota. The plaintiff alleges that a truck owned by the defendant and operated by its employee struck a truck owned and being operated by Clyde McKeehan, in which Grubs was riding as relief driver, and that the collision and resulting death of Grubs were proximately caused by the defendant's negligence. In Cause No. 293, Clyde McKeehan seeks damages for personal injuries sustained in the same accident.

Defendant's motions are made for the following reasons:

1. The action arises out of a tort which occurred two miles west of McIntosh, South Dakota.

2. Compulsory process for attendance of witnesses in South Dakota is available in the District of South Dakota and not in the District of Montana.

3. Most of the witnesses reside in South Dakota, and the cost of obtaining the attendance of willing witnesses would be greatly reduced if a trial were held in South Dakota.

4. The likelihood of postponement or delay of trial by reason of unavailability of material witnesses or the need of taking depositions would be lessened if the causes were transferred.

5. The law of South Dakota would apply and could be more easily and readily applied in a trial in the District of South Dakota.

6. A jury chosen from the community in which the tort occurred would be better able to judge the merits of the cases.

7. A change of venue to South Dakota would make the trial easier, more expeditious, and less expensive.

8. A trial in South Dakota would best serve the convenience of the parties and the end of justice.

The motions are supported by affidavits of counsel, in one of which it is recited that Clyde McKeehan was taken to a hospital in Lemmon, South Dakota, and attended by Dr. C. H. Johnson of that city; that among the first arrivals at the scene were Bernard Mattern, of Lemmon, South Dakota, and Robert Warren, of McIntosh, South Dakota; that the accident was investigated by State Highway Patrolman George I. Samis, of Lemmon, South Dakota, Henry Kittleson, sheriff of Corson County, McIntosh, South Dakota, and Cecil Hanson, coroner of Corson County; that a complete engineering study of the scene of the accident was made by Emerson Engineering Company of Aberdeen, South Dakota, and photographs were taken by Leonard Studios of Mobridge, South Dakota; "that the testimony of all these parties with respect to the physical facts at the scene of the accident, nature and condition of terrain, visibility, weather conditions, admissions of parties, and nature and extent of injuries are all of vital importance in a fair and impartial trial of the action, and should be seen and observed by any jury trying the case"; that the two employees of the defendant live in Villa Park, Illinois, and "it is more convenient for South Dakota counsel of defendant to work with said employees, and more convenient for said employees to proceed to Deadwood than to Montana"; that except for Clyde McKeehan, there are no witnesses in Montana with respect to the question of liability, and the only other witnesses in Montana are doctors

2. See "Observations on Transfers under Section 1404(a) of the New Judicial Code" by Hon. Irving R. Kaufman, 1950, 10 F.R.D. 595.

who attended Clyde McKeehan. In Cause No. 292 there is an additional affidavit of counsel that the appointment in the State of Montana of an administrator is no impediment to transfer of the case to the District of South Dakota, in that an action for wrongful death may be maintained in South Dakota by a foreign administrator.

An affidavit, in each case, of counsel for plaintiff in opposition to the motion for transfer recites, inter alia, that the defendant is a Washington corporation and maintains terminal facilities at Billings, Montana; that the scene of the accident is 223 miles by road from Deadwood, South Dakota; that none of the witnesses for either party reside in the vicinity of Deadwood; that the only eyewitnesses are Clyde McKeehan, one of the plaintiffs, and the two drivers for the defendant who reside at Villa Park, Illinois; that the witnesses Bernard Mattern and Robert Warren do not appear to be material witnesses and that it is probable their testimony would be taken by deposition whether the case is tried in Deadwood or Billings; that Mattern resides 180 miles and Warren 220 miles from Deadwood; that the proposed witnesses Samis, Kittleson, and Hanson are not eyewitnesses and it does not appear that their testimony would be material, except as to the physical facts as to the scene of the accident, the nature and condition of the terrain, visibility, weather conditions and such other matters "as will not be, so far as affiant knows, matters of substantial dispute between the parties and it would therefore appear that their testimony may be easily taken by deposition or that the matters to which they would testify may be stipulated to or obtained by request for admission of facts"; that Emerson Engineering Company is located more than 300 miles from Deadwood, and any witness appearing on behalf of this company would be an expert witness; that any photographs taken by Leonard Studios of Mobridge, South Dakota, "may be properly authenticated without the necessity of calling the photographer as a witness".

It is further recited in the affidavit in Cause No. 292 that evidence relating to the plaintiff's deceased husband's earnings and testimony from members of his family and persons acquainted with plaintiff relating to plaintiff's damages can more easily and conveniently be obtained were trial to be held at Billings rather than Deadwood; that plaintiff has been left with two minor children to support and is without funds to support them and has no funds to pay traveling expenses for herself, or for her children, and has no funds with which to bear the expense of the trial of this case in Deadwood, South Dakota. In the affidavit in Cause No. 293 it is recited that plaintiff's chief witnesses, particularly on the question of damages, will be two physicians and surgeons who reside at Billings, Montana; that it would be financially impossible for plaintiff to arrange for their attendance at Deadwood, South Dakota; that, in addition, evidence relating to hospital records and testimony from members of plaintiff's family and persons acquainted with plaintiff, relating to plaintiff's damages, can more easily and conveniently be obtained were trial to be held at Billings; that plaintiff was severely injured and cannot walk without great difficulty and discomfort and that it would be a great physical hardship were he required to travel to Deadwood, South Dakota, for trial; that he is without funds to bear the expense of the trial of this case in Deadwood, South Dakota.

Prior to the enactment of section 1404(a) in 1948, the federal courts had no power to transfer an action to a more convenient court. Under the doctrine of forum non conveniens the only possible remedy was dismissal. While many of the relevant factors under the doctrine of forum non conveniens have not changed, the court has a broader discretion under section 1404(a). As the Supreme Court said in Norwood v. Kirkpatrick, 1955, 349 U.S. 29, 75 S.Ct. 544, 99 L.Ed. 789, " * * * we believe that Congress, by the term 'for the convenience of parties and witnesses, in the interest of justice,' intended to permit

courts to grant transfers upon a lesser showing of inconvenience. This is not to say that the relevant factors have changed or that the plaintiff's choice of forum is not to be considered, but only that the discretion to be exercised is broader." 349 U.S. at page 32, 75 S.Ct. at page 54 [3].

■■■■■ Although the district judge has a broader discretion in acting on motions to transfer, "in exercising this discretion he is limited in his consideration to the three factors specifically mentioned in § 1404(a), and he may not properly be governed in his decisions by any other factor or consideration",[4] except that due consideration must be given to plaintiff's choice of forum.[5] Nor may he consider one factor to the exclusion of the other two. The test "in the interests of justice" includes, in addition to the convenience of the parties and witnesses, such criteria as the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling witnesses, and the cost of obtaining attendance of willing witnesses; the possibility of a view of the premises, if appropriate; the state of the court calendar in both districts; the burden of jury duty on people of a community having no relation to the litigation; the unnecessary injection of problems in conflict of laws; and all other practical problems which make the trial of a case easy, expeditious, and inexpensive.[6]

In Gulf Oil Corp. v. Gilbert, 1947, 330 U.S. 501, 67 S.Ct. 839, 843, 91 L.Ed. 1055, the Supreme Court, after setting forth the criteria which should govern in applying the doctrine of forum non conveniens, said that "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." This rule has been followed in many cases subsequent to the enactment of section 1404(a).[7]

In Ford Motor Co. v. Ryan, 2 Cir., 1950, 182 F.2d 329, certiorari denied 340 U.S. 851, 71 S.Ct. 79, 95 L.Ed. 624, the court interpreted the foregoing language in Gulf Oil Corp. v. Gilbert "to mean (a) that a defendant has the burden of making out a strong case for a transfer and (b) that the plaintiff's privilege, conferred by statute, of choosing the forum he selected is a factor to be considered as against the 'convenience' of the witnesses or what otherwise might be the balance of 'convenience' as between 'the parties.'" 182 F.2d at page 330.

■■■■ It was held, however, in Josephson v. McGuire, D.C.D.Mass.1954, 121 F.Supp. 83, 84, that while "a large meas-

3. The court quoted with approval from Judge Goodrich's opinion in All States Freight v. Modarelli, 3 Cir., 1952, 196 F.2d 1010, as follows: " 'The forum non conveniens doctrine is quite different from Section 1404(a). That doctrine involves the dismissal of a case because the forum chosen by the plaintiff is so completely inappropriate and inconvenient that it is better to stop the litigation in the place where brought and let it start all over again somewhere else. It is quite naturally subject to careful limitation for it not only denies the plaintiff the generally accorded privilege of bringing an action where he chooses, but makes it possible for him to lose out completely, through the running of the statute of limitations in the forum finally deemed appropriate. Section 1404(a) avoids this latter danger. Its words should be considered for what they say, not with preconceived limitations derived from the forum non con-

veniens doctrine.' " 349 U.S. at page 31, 75 S.Ct. at page 546.

4. Chicago, Rock Island & Pacific Railroad Co. v. Igoe, 7 Cir., 1955, 220 F.2d 299, 302, certiorari denied 350 U.S. 822, 76 S.Ct. 49, 100 L.Ed. 735.

5. See Brown v. Woodring, D.C.M.D.Pa. 1959, 174 F.Supp. 640, 645, and cases there cited.

6. See Gulf Oil Corp. v. Gilbert, 1947, 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055; Chicago, Rock Island & Pacific Railroad Co. v. Igoe, supra; Brown v. Woodring, supra.

7. See Norwood v. Kirkpatrick, supra; Sociedade Brasilerira, etc. v. S. S. Punta Del Este, D.C.D.N.J.1955, 135 F.Supp. 394; Miracle Stretch Underwear Corp. v. Alba Hosiery Mills, D.C.D.Del.1955, 136 F.Supp. 508; Lesser v. Chevalier, D.C.S.D.N.Y.1956, 138 F.Supp. 330; and Ford Motor Co. v. Ryan, infra.

ure of deference is due to the plaintiff's freedom to select his own forum", this "factor has minimal value where none of the conduct complained of occurred in the forum selected by the plaintiff * * *." [8] This is particularly true where the plaintiff is not a resident of the judicial district where he has instituted suit.[9]

On the other hand, it has been held that the residence of the plaintiff, while not the only consideration, is a fact of "high significance". Markantonatos v. Maryland Drydock Co., D.C.S.D.N.Y. 1953, 110 F.Supp. 862, 864.[10] Plaintiffs here are bona fide residents of the judicial district, living at Laurel, Montana, 15 miles from Billings. The cases do not accordingly involve the question of "shopping around" for a jurisdiction where higher verdicts might be anticipated.[11]

Plaintiffs argue that defendant's motions and affidavits are inadequate in that they fail to state what defendant intends to prove by the witnesses listed in the affidavits. The position of a defendant is of course clearer where the proposed testimony is given, and many cases have stressed the necessity of such information to sustain defendant's burden;[12] but other cases have not required a showing of the precise witnesses to be called or any detailed statement of their testimony. See Brown v. Woodring, D.C. M.D.Pa.1959, 174 F.Supp. 640, 647, and cases there cited.[13] Certainly the nature of the testimony to be offered by the witnesses and whether they are "key witnesses" are factors to be considered by the court in ruling on a motion to transfer.

There is merit in defendant's contention that a federal judge sitting in South Dakota is more likely to appraise correctly the South Dakota law. As the Supreme Court said in Gulf Oil Corp. v. Gilbert, supra, "There is an appropriate-

---

**8.** See also In re Josephson, 1 Cir., 1954, 218 F.2d 174; Chicago, Rock Island & Pacific Railroad Co. v. Igoe, supra, and Morgan v. Illinois Central Railroad Co., D.C.S.D.Tex.1958, 161 F.Supp. 119.

**9.** See Southern Railway Company v. Madden, 4 Cir., 1956, 235 F.2d 198, 201, where it was held that the trial judge had abused his discretion in denying transfer of a case where it appeared that the accident occurred in Charlotte, North Carolina; that all of the witnesses to the occurrence and to the treatment of plaintiff in a Charlotte hospital following his injury lived in Charlotte, except one who had moved to another state; that a view of the "locus in quo" by the jury would be important and could be had only if the case were tried in Charlotte; that the plaintiff was not a resident of Columbia, South Carolina, where suit was brought or "even in that judicial district", but lived in a town in another judicial district approximately as far from Columbia, South Carolina, as from Charlotte, North Carolina; and that no one would be inconvenienced except plaintiff's attorneys, a photographer who had taken some pictures, and a surgeon and hospital attendants where plaintiff had been treated several months after his injury.

**10.** In a case in many respects comparable

to the instant case, the court held that forcing the "plaintiff to leave the district of his residence and conduct a trial in a foreign district would in the circumstances of this case be a hardship". See also Koster v. (American) Lumbermens Mutual Cas. Co., 330 U.S. 518, 524–525, 67 S.Ct. 828, 91 L.Ed. 1067.

**11.** See Bush v. United Air Lines, Inc., D.C.S.D.N.Y.1956, 148 F.Supp. 104.

**12.** See Jenkins v. Wilson Freight Forwarding Co., D.C.S.D.N.Y.1952, 104 F. Supp. 422, 424, where Judge Kaufman, in denying a motion to transfer, said in part: "While defendants list seven witnesses, who saw the accident or whose testimony will be material at the trial, there is absent the clear allegation that each one of them will actually be called to testify at the trial * * * The party seeking the transfer must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover". See also Headrick v. Atchison, T. & S. F. Ry. Co., 10 Cir., 1950, 182 F.2d 305; Chicago, Rock Island & P. R. Co. v. Hugh Breeding, Inc., 10 Cir., 1957, 247 F.2d 217, 226.

**13.** For example, Hill v. Upper Mississippi Towing Corp., D.C.D.Minn. 4th Div.1956, 141 F.Supp. 692, 696.

ness, too, in having the trial of a diversity case in a forum that is at home with the state law that must govern the case, rather than having a court in some other forum untangle problems in conflict of laws, and in law foreign to itself." 330 U.S. at page 509, 67 S.Ct. at page 843. While this is a factor to be considered, it is by no means controlling, and is of less significance in cases of this nature than where a question of conflict of laws is more likely to be presented.

■ The residence and availability of the physicians who treated plaintiff are factors to be considered, particularly where, as in the McKeehan case, "a crucial issue for determination must necessarily evolve about the degree and character of the injury sustained * * *." Padgett v. Atlantic Greyhound Corp., D.C.W.D.Pa.1954, 126 F.Supp. 124, 125.[14] The residence of the attending physicians is not, however, in itself controlling, and should simply be considered with other relevant factors.[15]

■■ Inconvenience of counsel is not a relevant factor for consideration,[16] and the convenience of an expert witness (except as noted with respect to attending physicians) is entitled to little consideration.[17] The ability of the respective litigants to bear the expenses of trial in a particular forum may be considered.[18]

The foregoing sets forth the criteria and principles of law which I deem relevant in the instant cases and which must be balanced in determining whether a transfer would better serve the convenience of the parties and witnesses and the interests of justice.

Insofar as the convenience of parties is concerned, the showing in the respective affidavits preponderates in favor of the plaintiffs. With respect to the convenience of witnesses, a trial in Billings would be more convenient for plaintiffs' key witnesses, and little, if any, less convenient for defendant's drivers who reside in a suburb of Chicago, Illinois. Of the remaining witnesses listed in the affidavit of defendant's counsel, two arrived at the scene of the accident after it occurred, three were investigating officials, one a physician who attended the plaintiff McKeehan immediately after the accident, a representative of an engineering concern which prepared an engineering study of the scene of the accident, and a photographer who took some pictures. All of these witnesses live from 180 to 300 miles from Deadwood. The first five presumably will testify with respect to the "physical facts of the scene of the accident, nature and condition of terrain, visibility, weather conditions, and admissions of parties". Plaintiffs' counsel states in his affidavits that as far as he knows there will be no substantial dispute with respect to these matters, and he suggests that the dispositions of these witnesses be taken or that the matters to which they will testify be stipulated or obtained by request for admission of facts. It cannot be determined from the defendant's affidavits whether any of these witnesses will be "key witnesses" for the defendant or whether it will be necessary for an adequate defense to have any of them personally present for the trial. Plaintiffs' counsel has indicated that the photographs may be properly authenticated without calling the photographer as a witness.

While the parties could not compel the attendance of any of the proposed witnesses, there is no showing that any of them are likely to be unwilling witnesses. The scene of the accident is too far from

14. See also Higgins v. California Tanker Company, D.C.D.Del.1958, 166 F.Supp. 42.

15. See Hansen v. Nash-Finch Company, D.C.D.Minn.1950, 89 F.Supp. 108; Tankel v. Seiberling Rubber Co., D.C. N.D.Cal.1951, 95 F.Supp. 987; Morgan v. Illinois Central Railroad Company, D.C.S.D.Tex.1958, 161 F.Supp. 119.

16. See Cressman v. United Air Lines, Inc., D.C.S.D.N.Y.1958, 158 F.Supp. 404, 407, and cases there cited.

17. See Early & Daniel Company v. Wedgefield, Inc., D.C.M.D.N.C.1958, 164 F.Supp. 414, 418.

18. Keller-Dorian Colorfilm Corp. v. Eastman Kodak Co., D.C.S.D.N.Y.1949, 88 F.Supp. 863, 866.

Deadwood to make a view of the premises feasible. There is no suggestion of any delay by reason of a congested calendar in either district. There would be some additional expense in bringing defendant's witnesses to Montana, although it seems probable that the depositions of at least some of them will be used whether the case is tried in Deadwood or Billings. It would of course be easier for a federal judge in South Dakota to apply South Dakota law, and in view of the fact that the accident occurred in South Dakota, it may be argued that jury duty should not be imposed upon citizens of Montana. Both plaintiffs, however, are residents of this district. There can be little question that a trial in South Dakota would work a hardship on both plaintiffs.

Balancing all of the factors favorable to the respective parties, it is my conclusion that defendant has failed to sustain its burden of showing that the convenience of parties and witnesses and the interests of justice will better be served by transfer to South Dakota.

Accordingly, the motion to transfer in each case is denied.