**UNITED AIR LINES, INC., Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**Civ. A. No. 2043.**

United States District Court
D. Delaware.

Feb. 21, 1961.

James M. Tunnell, Jr., Harvey S. Kronfeld and Richard H. Allen of Morris, Nichols, Arsht & Tunnell, Wilmington, Del., David L. Corbin, of Haight, Gardner, Poor & Havens, New York City, for plaintiff.

Leonard G. Hagner, U. S. Atty., Wilmington, Del., Max F. Deutz, Chief Asst. U. S. Atty., Southern District of California, Los Angeles, Cal., Max L. Kane

and Milan M. Dostal, Attys. Dept. of Justice, Washington, D. C., for defendant.

## CALEB M. WRIGHT, Chief Judge.

United Air Lines, Inc. (United), a Delaware corporation, instituted the present action under the Federal Tort Claims Act, 28 U.S.C.A. § 1346(b), to recover damages allegedly resulting from a mid-air collision over Nevada between a United plane and a jet aircraft owned and operated by the United States Air Force. There were no survivors. A substantial counterclaim has been interposed by defendant for the loss of its aircraft and as a subrogee to the claims of 7 widows of government employees who were fare-paying passengers on the United plane. This is a ruling upon defendant's motion for a change of venue to the District of Nevada.

A previous motion of the same nature was denied by this Court in a Memorandum Opinion stating in part:

"* * * [T]he court remains unconvinced that the defendant has made a sufficient showing by merely listing names and addresses of persons who may be required to testify at the trial. The nature of this case is such, that the granting of this motion absent adequate information with respect to the content and materiality of each prospective witness's testimony, would not be in the interest of justice and conceivably not for the convenience of witnesses and parties." United Air Lines v. United States, D.C.Del., 192 F.Supp. 795, 796.

1. Defendant's Main Brief, p. 6.
2. Deutz Affidavit, p. 13.
3. If Eastern Air Lines v. Union Trust Co., 1955, 95 U.S.App.D.C. 189, 221 F. 2d 62, certiorari denied sub. nom. Union Trust Co. v. United States, 1955, 350 U.S. 911, 76 S.Ct. 192, 100 L.Ed. 799, is followed, the Court may have to look to the law of several states.
4. In Higgins v. California Tanker Co., D.C. D.Del.1958, 166 F.Supp. 42, this Court held that motions for change of venue

This phase of the Court's Opinion has been fully justified by subsequent events, for defendant itself now concedes "the testimony of many of these witnesses would be irrelevant."[1] As for the remainder, with the exception of the 7 widows, the government has again failed to support its claims but has relied merely on vague assertions that "the exact needs of the parties in this regard cannot be determined at the present time."[2] The Court believes its previous Opinion to be a complete and final answer to the government's contentions on this score.

■ Defendant raises other factors such as a need for a view of the area in which the collision took place, a need for a view of the aircraft, and this Court's unfamiliarity with Nevada law. The Court finds these factors either insubstantial or fully provided for in the present forum. A view of the scene of the crash is not likely to be of much aid, for topographical maps or photographs, supplemented by expert testimony, are likely to be far more illuminating to the trier of fact than a glimpse at some mountains. Wiener v. United States, D.C.S.D.Cal. 1961, 192 F.Supp. 789. There is also no reason why the particular aircraft cannot be available at a location relatively near this Court. Lastly, even if Nevada law governs the negligence aspects of the case,[3] this Court does not expect to encounter much difficulty in mastering Nevada principles in this relatively familiar field.

■ The core issue in this motion is one of consolidation.[4] There are pres-

must be judged in light of the statutory standards of convenience of parties, convenience of witnesses, and interests of justice. No departure from those tests is intended here. The witnesses in this litigation are scattered throughout the world, and the parties may conveniently try this particular action in Delaware. The real problem, therefore, is the multiplicity of suits arising from the collision, a factor which certainly comes within the term "interests of justice."

ently 48 law suits pending in 12 different United States District Courts.[5] The scorecard reads as follows:

27 – S. D. California
8 – Nevada
3 – Nebraska
2 – Colorado
1 – Delaware
1 – Florida
1 – Iowa
1 – New Jersey
1 – Massachusetts
1 – Missouri
1 – New York
1 – Washington

Of these (discounting the Delaware action between the principal parties), 34 are against United and the government jointly, 8 against the government alone, and 5 against United alone. All raise issues which are the subject of the Delaware action.

Demonstrably, there is a need for consolidation. The possibility or feasibility of such consolidation under present law, however, is not so clear.

Because the only substantial consolidation yet effectuated is in the Southern District of California, the Court suggested that would be the proper forum in which to try this action. Further reflection has indicated this would not be feasible.

▮▮▮ 28 U.S.C.A. § 1404(a), governing transfer to more convenient forums, allows transfer of a civil action only to a district "where it might have been brought." This language has been authoritatively construed to mean only districts in which venue would be initially correct without waiver by the defendant. Hoffman v. Blaski, 1960, 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254. The statute governing venue in actions under the Federal Tort Claims Act is 28 U.S.C.A. § 1402(b), which reads as follows:

"Any civil action on a tort claim against the United States under subsection (b) of section 1346 of this title may be prosecuted only in the judicial district where the plaintiff resides or *wherein the act or omission complained of occurred*." (Emphasis supplied).

Because United alleges several acts of negligence, one of which occurred in the Southern District of California, venue there would have been proper if the emphasized language is read literally. The courts are not in accord as to the interpretation of this language,[6] however, and it appears the Court of Appeals for the Ninth Circuit, encompassing California and Nevada, would read it to mean the place where the injury occurred. In United States v. Marshall, 9 Cir., 1956, 230 F.2d 183, that court said:

"As to the United States jurisdiction is based on the Tort Claims Act, 28 U.S.C.A. § 1346(b) providing for liability of the United States * * 'in accordance with the law of the place where the act or omission occurred.' * * * [T]he language quoted means the place where the negligence, either of act or omission, became operative, directly causing the injury and not places where the negligence existed but was then inoperative." 230 F.2d 183, 187.

That the Ninth Circuit construes this language as a reference to the place of injury was reemphasized in Hess v. United States, 9 Cir., 1958, 259 F.2d 285, 290, vacated and remanded on other grounds 1960, 361 U.S. 314, 80 S.Ct. 341, 4 L.Ed. 2d 305.[7] Because the statutory language governing venue in tort actions against the government is the same as that specifying the applicable law, it appears the California court would be compelled by the combination of Hoffman v. Blaski, supra, and United States v. Marshall, su-

5. See Deutz Affidavit, pp. 1–2.

6. Compare Eastern Air Lines v. Union Trust Co., supra, with United States v. Marshall, 9 Cir., 1956, 230 F.2d 183. The Court of Appeals for the Third Circuit has yet to rule on this issue.

Matland v. United States, 3 Cir., 1961, 285 F.2d 752.

7. The Supreme Court did not find it necessary in Hess to resolve this precise issue. 361 U.S. 314, 318 note, 80 S. Ct. 341, 4 L.Ed.2d 305.

pra, to retransfer this case should it be sent to Los Angeles. Such a result would be unseemly, and ultimate determination of the merits of the action would be greatly delayed.[8]

Furthermore, doubt has been cast upon the feasibility of consolidating even those cases now pending in Los Angeles. Chief Judge Hall of the Southern District of California ordered the actions consolidated and jointly tried on the issue of liability, damages to be determined in each individual case by separate juries. The Ninth Circuit has recently reversed this ruling and held that in these cases the jury which determines liability must also fix damages. United Air Lines v. Wiener, 9 Cir., 1961, 286 F.2d 302. In effect, all 27 cases must be tried with one jury determining both liability and damages, or each must be tried separately. Although the ultimate course to be followed there is as yet undetermined, it suffices for purposes of this opinion to state that neither alternative is particularly desirable.[9] It thus appears that under existing law transfer to Los Angeles would not be in the interests of justice.

■ Nor would transfer to the District of Nevada materially aid in effectuating a consolidation or furthering the interests of justice. Of the 8 suits pending there, 4 were brought by the government itself and are identical to those involved in the counterclaim in Delaware. Two others were brought by widows and collateral heirs of deceased government employees against both principal parties. But these plaintiffs have brought identical actions in the Southern District of California. In effect, then, there are only 2 actions in Nevada which either cannot be consolidated in California or are not already part of the Delaware litigation. In addition, the government has secured unconditional stipulations to transfer to Nevada in 2 suits in other jurisdictions.[10] In terms of consolidation, therefore, a net addition of only 4 cases out of 14 will result from a transfer of this case to Nevada. Nor is there any assurance that other transfers will follow as a matter of course if the present motion is granted. A similar motion has been denied in the consolidated cases in California, Wiener v. United States, supra, and the hardship on individual plaintiffs involved in such a transfer is likely to result in denials elsewhere. See Wiener v. United States, supra, and Bush v. United Air Lines, D.C.S.D.N.Y.1956, 148 F. Supp. 104. Moreover, consolidation in Nevada would also be subject to the ruling of United Air Lines v. Wiener, supra.

8. The Court does not intend to hold that it must be governed by the law of the transferee circuit when considering motions under 28 U.S.C.A. § 1404(a). But, in this case, the power of this Court to transfer under the law as enunciated by the Third Circuit is unclear, while the Ninth Circuit's view that it lacks such power is relatively certain. Under these circumstances, with the additional factor that effective consolidation in the Southern District of California now appears doubtful, see note 9 and accompanying text, infra, the Court finds that the standard "interests of justice" comes into play.

9. This is not intended as a criticism of the Ninth Circuit's ruling in the above case. The Court there was forced to accommodate certain policies underlying the jury system with the need for consolidation. The discussion here concerns the need for consolidation apart from these countervailing policies.

10. See Deutz Affidavit and accompanying documents. The term "unconditional stipulation" means an agreement to transfer for trial in Nevada all issues involved in a case. It does not include cases where the stipulation covers only the issue of liability. This limitation is necessary, for in one case the agreement was conditioned upon the parties stipulating the amount of damages, an unlikely occurrence at best. In two others, there was an agreement to be bound by a finding of liability in any court. This, if the parties so choose, may be effectuated without a transfer.

The Court does not consider the unconditional stipulations in two other cases to be of importance. One involves a very minor baggage claim and can be consolidated in the Southern District of California. The other, a Nebraska action, is also pending as one of the 8 cases in Nevada, Tunnell Affidavit, p. 3.

The government has vigorously emphasized the difficult position in which the 7 widows of government employees will find themselves if they must travel to Delaware. A word needs to be said about this. These women have already received compensation from the government, which is now suing as a subrogee to their claims.[11] They are government witnesses whose expenses will be paid and who need appear here only briefly to testify on the issue of damages.[12] In view of the rapid means of travel now available, no great hardship will be worked upon them. It is also noteworthy that when the government chose to duplicate some of the Delaware counterclaims, it did not institute the actions in the home districts of the widows, clearly the most convenient forum for them, but brought them in Nevada.[13] Moreover, even if the present motion is granted, this action will not be tried in their home districts. The Court finds, therefore, that although the welfare of the widows is a factor worthy of much consideration, it is not sufficient to justify transfer.

The greater part of this opinion has been concerned with refuting arguments advanced by the government. But, under the present circumstances, there are certain affirmative reasons for retaining this litigation in the present forum. There appears to be little possibility of consolidating this action with any substantial number of other cases. Transfer, while yielding only insignificant and uncertain benefits, will almost certainly delay trial of this case. Both parties concede this is the "keystone" action and is rapidly approaching the trial stage. A pre-trial has been scheduled for March 6 and 7, and an early trial date can be anticipated. It appears to be the only case in such an advanced stage. Resolution of the issue of liability in this case will certainly enhance the possibilities of settlement in other pending actions.[14] Because present circumstances preclude effective consolidation, the Court finds retention of this action in Delaware is the best alternative available in an inevitable choice between evils. The interests of justice therefore, preclude transfer, and the motion is denied.

Submit order.

11. See 5 U.S.C.A. § 776.

12. Government counsel concedes that the widows will not have to pay transportation costs unless the judgment received exceeds the amount they have been paid. In that event, the widows will be entitled to the surplus and will pay their fares from that sum.

13. At oral argument, government counsel said that one came from Washington, five from the Los Angeles area, and one from either Texas or Los Angeles. None live in Nevada.

14. To some undetermined extent, the doctrine of collateral estoppel may also come into play. Needless to say, this Court does not undertake to define the precise effect, if any, it will have.